HASTINGS *v.* WESTFALL.

4-4838

Opinion delivered November 29, 1937.

*Arthur Sneed* and *E. G. Ward,* for appellant.

*O. T. Ward,* for appellees.

MEHAFFY, J. Appellant, Carl Hastings, brought suit in the Clay circuit court alleging that he was the owner and entitled to possession of lots 3 and 4, block 23 in Bare's Addition to the town of Piggott, Arkansas. He claimed to have acquired title by purchase from the public improvement districts of Piggott, Arkansas, and exhibited deeds; that the title to the property, prior to the sale for improvement taxes, was in Fannie E. Westfall; that since the purchase of said property, he has paid state, county and improvement district taxes, has demanded possession, and this was refused him. He alleges that he was entitled to reasonable rent and fixed the amount at $10 per month.

The appellees answered denying the allegations of the complaint, and alleged that appellant's deeds were void and asked that they be canceled as a cloud on title of appellees, and sought to redeem said property from

the foreclosure sale for improvement taxes. Appellees asked that the cause be transferred to equity. Appellees filed an amendment to their answer and cross-complaint to which appellant filed a reply, and the following agreement was entered into:

## "I.

"That lots 3, 4 in block 23 in Bare's Addition to the town of Piggott, Clay county, Arkansas, same being the property involved in this action, became delinquent and forfeited for the nonpayment of the improvement taxes thereon in the Water Works Improvement District Number One; Sewer Improvement District Number One; and Light and Power Improvement District Number One; all in the city of Piggott, Clay county, Arkansas, for the years 1928, 1929 and 1930, and that said improvement districts by and through their board of commissioners, instituted suit in the eastern district Clay chancery court, to foreclose the lien for said improvement district taxes on said lots above described, together with various other lots and parcels of land as delinquent therein; that at the November term of said court held in Piggott, Arkansas, on the 23rd day of November, 1931, said chancery court rendered a decree of foreclosure of said improvement taxes as charged against said lots above described as extended against the same for said years, as shown by said decree in said chancery court record 8 at pages 396, 398 and 403 respectively.

## "II.

"That O. C. Grider was duly appointed commissioner in chancery by said court to make the sale of said property, and after he had advertised the same in the way and manner provided in said decree, said commissioner on the 29th day of January, 1932, offered and sold said lots herein described, at which said sale the said improvement districts became the purchaser of said lots described for the sums as charged against said lots therein. That thereafter said commissioner executed

and delivered to said improvement districts his deed for said lots, which deed was by said court duly confirmed on the 18th day April, 1932, and was thereafter filed for record and now appears of record in the office of the recorder of the eastern district of Clay county, Arkansas, in deed record 61, pages 366, 370 and 385 respectively, and shown by plaintiff's exhibits to his complaint as exhibits 'B' No. 1, No. 2 and No. 3 thereto.

## "III.

"It is further agreed that on the 17th day of February, 1932, said Improvement District, Light & Power Improvement District No. 1 of Piggott, Arkansas, purchased said lots from the State Land Commissioner as forfeited to the state for the nonpayment of the state and county general taxes for the year 1926, and which had been duly certified to the state of Arkansas as delinquent lands by the county clerk of Clay county, Arkansas, on the 21st day of August, 1929, and that said improvement district received State Land Commissioner's deed No. 36,953, therefor which said deed was duly recorded in the office of the recorder of said district, county and state, on the 19th day of February, 1932, and now appears of record therein in deed record 61, page 320 thereof.

## "IV.

"That on the 14th day of December, 1932, said improvement districts by its duly authorized officers, made, executed and delivered its special warranty deed for said lots to the plaintiff, Carl Hastings, which said deed was duly recorded in the office of the recorder on the 27th day of March, 1933, and now appears of record therein in deed record 61 at page 460 thereof.

## "V.

"That the plaintiff, Carl Hastings, since receiving his said deed from said improvement districts, has paid the improvement taxes and the state and county general taxes on said lots, and holds receipts therefor, as the same accrued thereon, from year to year.

## "VI.

"It is agreed herein that the above and foregoing stipulations may be offered and read as evidence herein

as being the facts as stated herein, and to be taken by the court, along with other evidence offered by the parties in this cause.

''Witness our hands on this the 5th day of May, 1937.''

Laud Payne testified that he was circuit clerk and was present in open court and heard the discussion between the parties when the question of settlement of the suit was discussed; that the settlement was discussed at length by both parties before the judge; it was then verbally agreed by both parties to hear the case again before the same judge at Corning a few days later. It seemed that about the only thing that was holding the transaction during the court was the matter of attorneys' fees and court costs, and Mr. Hastings would not settle until the attorneys' fees and court costs were all paid, in addition to $518.18 that he was to accept from appellee; heard Mr. Hastings say if defendants would pay the amount, $518.18, taxes, attorneys' fees and costs, he would settle the lawsuit; that the money was paid into his, witness' hands, and he now has the money; he told Mr. Hastings it had been paid, but Hastings refused to accept it; he first wanted to know who paid it; witness told him Mr. J. M. Walker; he said he would have been glad for Mr. and Mrs. Winston and Mrs. Westfall to have the place, and if they are going to keep the property he would accept the money; he added that he wanted to know who was to get the property before he would accept the money; the conversations mentioned by witness took place in the court house, March 16, 1937. The case was continued over-night to give the defendants an opportunity to get the money; the money was paid to witness on March 20.

Ethel Fay Winston testified that, while the court was in session, she, Mr. Winston and Mr. Walker had an agreement with Mr. Hastings about the settlement of the lawsuit; Mr. Hastings agreed to take $518.18 plus lawyer's fee; lawyer's fee was $50. Mr. Hastings agreed to accept this. Mr. Walker was assisting witness and her mother to adjust the matters; her mother is 76 years

old, health no good, and she owns no other property. The conversation occurred during court proceedings.

P. S. Winston testified that Hastings came to him and told him he was out $700, and witness told him he did not think it was that much, and if he would get down to where it was right they would settle; he told Hastings that Mrs. Westfall would settle with him if he would get to the right amount. The matter came up during court and an agreement and settlement was entered into, and in compliance with the agreement $568.18 was paid to the clerk in accordance with the agreement.

J. M. Walker testified that he assisted the Winstons in the attempted settlement; in a conversation Hastings agreed that if they would pay him $518.18 with a $50 lawyer fee he would make them a deed.

O. T. Ward testified that the agreement was made, and the payment of the amount constituted a settlement of the lawsuit.

Fannie E. Westfall testified to the conversation between Hastings, Walker and her daughter, and Hastings agreed to accept the $518.18 with a $50 lawyer fee.

Carl Hastings, the appellant, testified that he had no conversation with J. M. Walker nor with his attorney while court was in session; that he had not at any time agreed to accept his money back and make a deed to the property; that no one had tendered him the $518.18 or any other amount; that he offered in September, 1935, to pay defendant $200 for her equity; Laud Payne told witness he had the money and witness refused to accept it; does not remember getting a letter from O. T. Ward offering to pay the taxes and interest in redemption of the place; witness does not know how the question of $50 arose; his attorney had advised him that if the case stopped his fee would be $50, or $100 if he took it through court. No writings of any kind were signed regarding the alleged settlement.

J. M. Walker was recalled and testified to a conversation with Hastings, and said that Hastings told him that, if he would pay $50 lawyer's fee, he would make the deed; witness then went and got the money and put it in Laud Payne's hands; Hastings, on the

day court was in session, agreed to accept the taxes, interest and attorney's fee of $50.

O. T. Ward was recalled and testified that Hastings was demanding a $50 lawyer fee.

The chancery court entered a decree dismissing plaintiff's complaint, and divesting title to the property described out of Hastings, and investing the same in Fannie E. Westfall. This appeal is prosecuted to reverse said decree.

Appellant's first contention is that no agreement was made. Whether there was agreement was a question of fact, and we cannot say that the finding of the chancellor is against the preponderance of the evidence; and under the well-established rule of this court, unless we can say that the finding of the chancellor was against the preponderance of the evidence, we cannot reverse his decree.

His next contention is that, if the agreement was made, it was within the statute of frauds, because it was not in writing.

The statute of frauds, § 6059 of Pope's Digest provides that no action shall be brought to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them, unless the same is in writing.

No action was brought in this case to charge any person upon a contract for the sale of land, but the appellant, who claimed under a tax title, brought the suit against appellees, who were in possession of the land, and the agreement testified about was an agreement to settle the lawsuit, and the statute of frauds has no application. Appellant claimed to be the owner of the land by reason of his purchase from the improvement district, and the appellees, who were in possession, claimed that his title was void, and then, according to the contention of appellees, they entered into an agreement settling the lawsuit.

It is finally contended that if there were a contract made, it was not sufficiently certain and definite to justify a decree of specific performance. The facts are that there is no dispute about the tract of land in controversy.

The appellant himself introduced the deeds, or attached them to his complaint, showing a description of the land, and the amount that appellees were to pay, in order to settle the lawsuit, was definite and certain.

We find no error, and the decree is affirmed.